[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
FACTS
The plaintiff, Miller's Pond Company, L.L.C., is a limited liability company located in Waterford, Connecticut and the owner of a seventy-seven acre man-made lake called Miller's Pond. The individual plaintiffs, Gary Saunders and Thomas Schacht, are the founding and managing members of the company, respectively. By complaint dated August 4, 2000, the plaintiffs brought action against the City of New London, the City of New London Water and Water Pollution Control Authority, the Town of Waterford and the Town of Waterford Water Pollution Control Authority, seeking monetary damages, declaratory and injunctive relief pursuant to the Connecticut Antitrust Act for the defendants' alleged anti-competitive conduct.
The plaintiffs claim that since 1988 they have attempted to sell or develop Miller's Pond as a water source to utilities in the communities of New London and Waterford and portions of Montville and East Lyme, and as a private water supply for industrial or recreational facilities in those geographical areas. It is alleged that the defendants own, operate and control every significant source of fresh water and related water supply facilities located within their municipal borders and capable of serving said areas, except for Miller's Pond. Through various contractual and other arrangements, the plaintiffs claim that the defendants have intentionally thwarted the plaintiffs' ability to expand their business.
The four-count complaint alleges violations of sections 35-26
(restraint of trade), 35-27 (monopolization), 35-28 (per se unlawful acts) and 35-29 (illegal tying arrangements) of the Connecticut General Statutes, the Connecticut Antitrust Act. By motion dated April 1, 2002, the defendants move for summary judgment as to all four counts of the plaintiffs' complaint claiming that their alleged conduct falls within the CT Page 335 state action immunity provision of the Act and that the plaintiffs lack antitrust standing. The court heard oral argument on the defendants' motion for summary judgment on September 23, 2002.
DISCUSSION
Pursuant to Practice Book section 17-45, "summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[1]
(Internal quotation marks omitted.) Miles v. Foley, 253 Conn. 381, 385,752 A.2d 503 (2000). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Internal quotation marks omitted.) Sherwood v. DanburyHospital, 252 Conn. 193, 201, 746 A.2d 730 (2000). "In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist."Nolan v. Borkowski, 206 Conn. 495, 500, 538 A.2d 1031 (1988). "The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts . . ." (Internal quotation marks omitted.) Hertz Corp. v. Federal Insurance Co., 245 Conn. 374, 381,713 A.2d 820 (1998). "To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact." (Internal quotation marks omitted.) Witt v. St. Vincent's MedicalCenter, 252 Conn. 363, 372 n. 7, 746 A.2d 753 (2000).
STATE ACTION IMMUNITY
Section 35-31 (b) of the General Statutes, a provision of Connecticut's Antitrust Act setting forth one of the exceptions to the Act, provides as follows: "Nothing contained in this chapter shall apply to those activities of any person when said activity is specifically directed or required by a statute of this state, or of the United States." The defendants claim that their activities fall within this exception and that they are entitled to judgment as a matter of law.
For purposes of this motion only, the defendants stated at oral argument that they are admitting the allegations of the complaint.[2]
All of the alleged conduct, they argue, falls within the immunity provision of section 35-31 (b). The basis for their claim is that they operate water utilities pursuant to and in accordance with a very comprehensive scheme of local, regional and state regulation. New London's initial authority originates with a special act adopted by the legislature on July 5, 1871. By the provisions of that act, the city of CT Page 336 New London was authorized and empowered" to "take and convey from . . . [any] . . . ponds, or streams, in the town of Waterford, or any other town, or from any other source of supply, natural or artificial, in said towns, such supply of water as the necessities or convenience of the inhabitants of said city [of New London] may require . . ." A subsequent special act, adopted by the legislature in 1901, further authorized New London to exercise the power of eminent domain in the towns of Salem, Waterford, East Lyme or Montville for the purpose of obtaining an additional water supply.
At the present time, several statutes and the regulations of several state agencies regulate the development of water resources throughout the state of Connecticut. The defendants enumerated several statutes and regulations which evidence a legislative design for the provision of drinking water to the public. The purpose for such intensive regulation is stated in section 25-33c of the General Statutes:
 Legislative finding. The General Assembly finds that an adequate supply of potable water for domestic, commercial and industrial use is vital to the health and well-being of the people of the state. Readily available water for use in public water systems is limited and should be developed with a minimum of loss and waste. In order to maximize efficient and effective development of the state's public water supply systems and to promote public health, safety and welfare, the Department of Public Health shall administer a procedure to coordinate the planning of public water supply systems.
According to the defendants, these special acts, statutes and regulations, as a whole, direct or mandate activities which are encompassed by the state action immunity provision. More specifically, the defendants argue that they are required to provide an adequate supply of safe drinking water to their residents, that New London is authorized to create a municipal water system and that, once it opts to create such a system, it is then required to abide by the numerous statutes and regulations controlling the distribution of the water through its system. The plaintiffs argue that being "authorized" or "empowered" to create a municipal water authority does not equate to activity being "specifically directed or required" by the state. Further, plaintiffs claim that the regulatory scheme is addressed primarily to the retail sale of water and that the plaintiffs are claiming they are being prevented from competing in the wholesale market by conduct clearly outside the scope of the statutes and regulations. CT Page 337
The state action immunity provision of Connecticut's Antitrust Act has been discussed by our Supreme Court in the cases of Mazzola v. SouthernNew England Telephone Co., 169 Conn. 344, 363 A.2d 170 (1975) andWestport Taxi Service v. Westport Transit District, 235 Conn. 1,664 A.2d 719 (1995). In Mazzola, the Court noted as follows:
 [T]he exception authorized by 35-31 (b) represents a narrowly drawn version of the doctrine of "state action" immunity from antitrust liability articulated by the United States Supreme Court in Parker v. Brown, 317 U.S. 341, 350-51, 63 S.Ct. 307, 87 L.Ed. 315. The court in that case carved out an exemption from Sherman Act liability for activities "commanded" or "directed" by a state legislature. Ibid. Section 35-31
(b) limits that holding by purporting to immunize only activities which are "specifically" required or directed by state or federal statutes.
Mazzola, supra, 359. Applying this standard, the Court concluded that the activities of the defendant telephone company, authorized by a tariff which became effective through the implementation of the procedure set forth in Section 16-19 of the General Statutes, were not "specifically directed" by the state and, therefore, not exempt from antitrust liability. The Court reached this conclusion because "the role that is statutorily assigned to the PUC [Public Utilities Commission] in rendering effective tariffs proposed by companies such as the defendant amounts to little more than acquiescence in a program originated by the defendant." Id., 365-366.
In the Westport Taxi case, the defendant did not specially plead state action immunity and the issue was not raised during the trial of the case. The issue surfaced in the context of post trial briefs. After citing to and quoting from Mazzola, supra, the Court concluded the record was factually insufficient to permit appellate review.[3]
In addition to the two Connecticut Supreme Court decisions, there is a superior court decision and a federal district court decision addressing the applicability of Section 35-31 (b) to certain activities claimed to be monopolistic. In Professional Ambulance Service, Inc. v. Blackstone,35 Conn. Sup. 136, 400 A.2d 1031 (1978), an ambulance service provider brought suit against the mayor of East Hartford for issuing directives in accordance with certain state health department regulations. The regulations created primary service areas for emergency services and, in following these regulations, the mayor assigned one responder to his area CT Page 338 and restricted the advertising of any other emergency services providers. The plaintiff claimed a loss of business as the result of the defendant's activities.
Judge Covello concluded that the defendant's conduct was not in violation of the antitrust statutes because he was simply following the regulations as promulgated, thereby affording him state action immunity. Judge Covello discussed the Mazzola and Parker v. Brown cases and concluded section 35-31 (b) applied and exempted these activities from antitrust liability. The court first noted that "the parties sought to be enjoined from alleged antitrust activities are not the officers of a private company regulated by a state agency, but are the officials of the state and municipal agencies themselves, pursuing emergency medical service functions directed by the statutes." Id., 142. After reviewing the statutes and regulations pertaining to the emergency medical care service system, the court concluded as follows:
 It is evident that the totality of the mandate set out in these statutes furnishes an adequate basis and authority for the promulgation of regulations creating the primary service areas, assigning one responder to each such area and limiting or restricting the advertising of those who would provide emergency services or personnel. The court therefore concludes that the activities here in issue represent the product of specifically directed state action.
Id., 143.
The opinion in the federal district court case, issued in 2000, was also written by Judge Covello. In Wheelabrator Environmental Systems v.Galante, 2000 WL 863029 (D. Conn. 2000), the plaintiff brought a breach of contract suit against the defendant for failure to deliver waste to a designated Wheelabrator facility. Wheelabrator is a private company that operates waste-to-energy resource recovery facilities in Connecticut. The defendant filed a counterclaim alleging Wheelabrator violated certain provisions of Connecticut's Antitrust Act. Wheelabrator moved for judgment on the pleadings as to defendant's counterclaim, claiming it should be dismissed in its entirety on the basis of the state action immunity provision.
All of the alleged conduct of Wheelabrator arose out of its contractual relationship with the Housatonic Resources Recovery Authority (HRRA). Wheelabrator was authorized by statute to enter into the subject waste agreement with HRRA. Judge Covello, after citing Mazzola, Parker v.CT Page 339Brown and his previously decided case of Professional Ambulance Service,Inc., concluded that the "totality of the mandate set out in [the applicable municipal solid waste management] statutes provides an adequate basis for the court to conclude that Wheelabrator's actions, as alleged in the second amended counterclaim, were specifically directed or required by state statute, and thus, immune from liability under the Connecticut Antitrust Act. (Citation omitted.) The Connecticut legislature has promulgated several laws which direct municipalities in the handling of MSW [municipal solid waste] management and specifically establish a municipal resources recovery authority's power to enter into contracts for the disposal of MSW." (Internal quotation marks omitted.) Id., 5-6.
All of the foregoing cases refer to the Parker v. Brown case, a United States Supreme Court decision, as the origin of the state action immunity doctrine. It is interesting to note that this doctrine has evolved through the years; under federal antitrust laws, the defendants' activities would clearly be exempt from liability. Judge Covello, in theWheelabrator case, provides a summary of federal case law addressing state action immunity.
 "[T]he Supreme Court first articulated what has become known as the state action defense to the Sherman Act" in Parker v. Brown. 317 U.S. 341 (1943). Automated Salvage Transport, Inc. v. Wheelabrator Envtl. Sys., Inc., 155 F.3d 59, 68 (2d Cir. 1998). This defense exempts "anticompetitive conduct engaged in as an act of government by the State as sovereign, or, by its subdivisions, pursuant to state policy to displace competition." City of Lafayette v. Louisiana Power Light Co., 435 U.S. 389, 413 (1978). In order for a state's subdivision to qualify for state action immunity, it must "identify a "clearly expressed state policy' that authorizes its [anticompetitive] actions." Cine 42nd Street Theater Corp. v. Nederlander Org., Inc., 790 F.2d 1032. 1043 (2d Cir. 1986). This burden is met when the subdivision can show that the anti-competitive action was a "foreseeable consequence of the state delegation" of authority (i.e., "that the "legislature contemplated the action complained of"). Id. (citing City of Lafayette v. Louisiana Power Light Co., 435 U.S. 389. 415 (1978)).
 Once the court determines that a state subdivision is CT Page 340 immune from antitrust liability for its "foreseeable" anti-competitive conduct, "the immunity should be extended to include private parties acting under the direction of the [subdivision]." Zimomra v. Alamo Rent-A-Car, Inc., 111 F.3d 1495. 1500 (10th Cir. 1997) see also Cine 42nd Street Theater Corp. v. Nederlander Org., 790 F.2d 1032. 1048 (2d Cir. 1986)
(holding that "the private [parties] acting in concert with the [state subdivision] are also entitled to state immunity" for their "foreseeable action"). "The success of an antitrust action should depend upon the nature of the activity challenged, rather than on the identity of the defendant." Southern Motor Carriers Rate Conference v. United States 471 U.S. 48. 58-59 (1985). Thus, "[w]here private parties are acting under the compulsion of a municipality or other political subdivision, the same ["foreseeable consequence'] test should apply to determine state action immunity regardless of who the named defendants are." Zimomra v. Alamo Rent-A-Car, Inc., 111 F.3d 1495. 1499-1500 (10th Cir. 1997).
Wheelabrator, supra, 6-7.
In 1992, Connecticut's legislature enacted section 35-44b of the General Statutes, which provides that Connecticut courts "shall be guided by interpretations given by the federal courts to federal antitrust statutes." As noted in Mazzola, and restated in the 1995 Westport Taxi
case, however, section 35-31 (b) of our statutes has no parallel in the federal antitrust statutes. Therefore, although the defendants' activities would clearly be exempt under the federal antitrust laws, this court follows Connecticut case law in its determination.
The fact that the defendants are municipalities and municipal agencies is an important, although not a determinative, factor. The defendants, being authorized to establish a water supply business, are heavily regulated by the statutory and regulatory scheme pertaining to the distribution of water. The legislature has determined that an adequate supply of potable water is vital to the health and well-being of the public and set forth a comprehensive procedure for the development of the state's public water supply systems. Section 25-33c, Connecticut General Statutes. Once New London decided to operate its own public water supply system, it was compelled to comply with a myriad of state requirements.
Providing a safe and adequate supply of water is a legislative CT Page 341 mandate. Because New London chose to do so with a municipal system, rather than having a private water company provide the water, does not divest the defendant of the protection afforded by the state action immunity provision of the antitrust statutes. The distribution of water is heavily regulated by the state and New London, being authorized and opting to create a municipal water system, is now directed by the state as to its activities in this area. Although New London is not required to have a municipal water system, unlike the situations in Judge Covello's cases wherein the designation of a single emergency services provider and the establishment of a comprehensive program for solid waste disposal were mandated, the court finds the difference to be a difference without a distinction. The fact is that a safe water supply is required and, once the municipality undertakes to provide it on its own rather than through a private water company, the distribution of that water and the activities connected therewith are specifically directed by the state. Further, the court finds that the defendants' activities fall within the scheme outlined in those state statutes and regulations. For these reasons, the defendants' activities are exempt from antitrust liability pursuant to section 35-31 (b) of the General Statutes.
ANTITRUST STANDING
Defendants' motion is denied as to the claim that plaintiffs do not have anti-trust standing. The conduct alleged would be sufficient to bring an anti-trust claim absent the exemption described above. Plaintiffs seek to compete in the southeast Connecticut wholesale water market. Their claimed injury is causally linked to an anti-trust violation and as the allegedly injured parties, they are the proper persons to maintain the action. Cargill, Inc. v. Monfort of Colorado,Inc., 479 U.S. 104, 109 (1986).
CONCLUSION
The court grants the defendants' motion for summary judgment as to all counts of the plaintiffs' complaint. The claims are barred by the doctrine of state action immunity as set forth in section 35-31 (b) of the General Statutes.
BY THE COURT
 ___________________ McLachlan, J.